### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| In re Berry, Dunn, McNeil & Parker Data Security Incident Litigation | Lead Case No. 2:24-cv-00146-JAW |

### PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Tonya Gambino, Quinston Anderson, Michael Meyerson, Laura Russell, Kathy Bishop, Randy Bishop, Kristine Iushkova, Robert Hickman, Sally Hughes, Donald Dee Smith, Melody Bowman, Brandy Brady, Virginia Deme-Duff, Myron Nottingham, and Yasmine Encarnacion, on behalf of themselves and other similarly situated, respectfully move this Court for an order preliminarily approving the proposed class action Settlement[1] with Defendants BerryDunn and Reliable. The Settlement will fully and finally resolve all claims in the Action, wherein Plaintiffs allege Defendants' inadequate data security practices allowed hackers to potentially access the Private Information, including Social Security numbers and driver's licenses numbers, of approximately two million individuals. Under the proposed Settlement, Defendants have agreed to pay $7,250,000.00 ($6,325,000.00 from or on behalf of Defendant BerryDunn and $925,000.00 from or on behalf of Defendant Reliable) in cash for the benefit of the Settlement Class. Moreover, Defendants agreed to enact enhanced data security practices to protect Settlement Class members' and others sensitive information for years to come. The value of these business practice changes is significant.

The Settlement consideration is fair, reasonable, and adequate. Plaintiffs and Class Counsel settled this Action with Defendants following arm's-length negotiations before an experienced

---

[1] All capitalized terms herein shall have the same meaning as those defined in the Settlement Agreement, attached hereto as ***Exhibit A***.

data breach mediator, Honorable David E. Jones (Ret.). Class Counsel have considerable experience in data breach litigation and are keenly aware of the strengths and weaknesses of litigating the Action. Notwithstanding their confidence in the merits of their claims, Plaintiffs recognize the challenges and risks inherent in litigation, trial, and appeals, including certification of any class, and Defendants' various defenses as to standing, liability, and other affirmative defenses. The Settlement will also avoid further delay and expensive and protracted litigation with uncertain results. In exchange for the consideration, Plaintiffs and all Settlement Class Members will release Defendants and the other Released Parties from any claims in the Action.

Based on the arguments contained herein and the Agreement and exhibits filed herewith, Plaintiffs and Class Counsel respectfully request the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes only the proposed Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim process; (5) approve the opt-out and objection procedures set forth in the Notice Program; (6) appoint the plaintiffs identified in paragraph 29 of the Agreement as Class Representatives; (7) appoint Jeff Ostrow, Mason Barney, and Bryan Bleichner as Class Counsel; (8) appoint Angeion Group, Inc. as the Settlement Administrator; (9) continue to stay the Action pending Final Approval; (10) enjoin and bar all members of the Settlement Class from continuing in any litigation or asserting any claims against Defendants and the other Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision to grant Final Approval of the Settlement; and (11) schedule a Final Approval Hearing.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Defendant BerryDunn is a leading national professional services firm providing assurance, tax, and consulting services to businesses, nonprofits, and government agencies throughout the

United States and its territories. Defendant Reliable is a technology consulting company that offers services to its customers, including, but not limited to, cloud hosting, managed services, information technology consulting, and security. BerryDunn was a client of Reliable.

As a necessary part of its business, Defendant BerryDunn collects, maintains, and stores Private Information pertaining to certain of its clients, including, but not limited to, names, email addresses, mailing addresses, dates of birth, Social Security numbers, and individual health insurance policy numbers. On or about April 25, 2024, Defendant BerryDunn filed an official notice of data security incident with the Office of Maine Attorney General. At or around the same time, Defendant BerryDunn issued notice of data security incident letters to individuals whose information may have been potentially accessible as a result of the Data Security Incident.

As set forth in the notice letter, Reliable received notice of unusual activity on or about September 14, 2023. An investigation revealed that an unauthorized party had access to certain files that contained sensitive information related to BerryDunn's Health Analytics Practice Group.

As a result of the Data Security Incident, commencing in April 2024, Defendant BerryDunn was named in eleven putative Related Actions that have overlapping claims, seek to represent the same putative class members, and arise out of the same Data Security Incident.[2] Plaintiffs in the Related Actions conferred and agreed to move to consolidate the Related Actions and to appoint

---

[2] *Gambino v. Berry, Dunn, McNeil & Parker, LLC,* No. 2:24-cv-00146; *Meyerson v. Berry, Dunn, McNeil & Parker, LLC*, No. 2:24-cv-00147; *Russell v. Berry, Dunn, McNeil & Parker, LLC*, No. 2:24-cv-00148; *Davis v. Berry, Dunn, McNeil & Parker, LLC*, No. 2:24-cv-00149; *Hickman v. Berry, Dunn, McNeil & Parker, LLC & Reliable Networks of Maine, LLC*, No. 2:24-cv-00150; *Demel-Duff v. Berry, Dunn, McNeil & Parker, LLC*, No. 2:24-cv-00151; *Bowman v. Berry, Dunn, McNeil & Parker, LLC & Reliable Networks of Maine, LLC*, No. 2:24-cv-00153; *Bishop v. Berry, Dunn, McNeil & Parker, LLC & Reliable Networks of Maine, LLC*, No. 2:24-cv-00154; *Edwards v. Berry, Dunn, McNeil & Parker, LLC*, No. 2:24-cv-00155; *Encarnacion v. Berry, Dunn, McNeil & Parker LLC & Reliable Networks of Maine, LLC*, Case No. 2:24-cv-174; and *Coulter v. Berry, Dunn, McNeil & Parker, LLC*, Case No. 2:24-cv-192 (after transfer from the United States District Court for the Northern District of Florida, Case No. 4:24-cv-00201).

Class Counsel as Interim Co-Lead Class Counsel. [DE# 6]. Thereafter, the Court consolidated the actions into this Action and appointed Jeff Ostrow, Mason Barney, and Bryan Bleichner as Interim Co-Lead Class Counsel for plaintiffs in the Action. [DE# 8].

On June 18, 2024, Plaintiffs filed an Amended Consolidated Class Action Complaint adding Defendant Reliable as an additional defendant. [DE# 60]. Thereafter, Class Counsel prepared written discovery, including interrogatories and a request for production. See Joint Declaration of Class Counsel ("Joint Decl.") ¶ 5, attached hereto as *Exhibit B*. Class Counsel also drafted a comprehensive Rule 30(b)(6) notice of deposition topics, prepared an extensive protocol for discovery involving electronically stored information, and a protective order. *Id*. Class Counsel also consulted with multiple data experts to understand how the breach occurred, the type of information involved, and whether the information was published on the dark web. *Id*.

Around the same time, the Parties began discussing possible resolution, and in furtherance scheduled a mediation with Judge Jones. *Id*. ¶ 6.  In advance of the mediation, Plaintiffs propounded informal discovery requests to learn as much as possible about the Data Security Incident and the scope of the class. *Id*. Through the provision of informal discovery, Plaintiffs were able to evaluate the merits of Defendants' respective positions. *Id*. The Parties also exchanged mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues. *Id*. The Parties mediated on September 23, 2024, and after a full day of negotiations and subsequent days of negotiations, agreed upon the material terms of a settlement. *Id*. ¶ 7. Thereafter, on September 30, 2024, the Parties filed a Notice of Classwide Settlement. [DE# 67].

## II.    SUMMARY OF THE SETTLEMENT

The following is a summary of the material terms of the Settlement.

### A.  The Settlement Class

The proposed Settlement establishes the following Settlement Class:

> All persons in the United States whose Private Information was potentially accessible as a result of the Data Security Incident, including those who were sent a notification from Defendant BerryDunn that their Private Information was potentially accessible as a result of the Data Security Incident.

Agreement ¶ 66. The Settlement Class excludes all (a) all persons who are governing board members of the Defendants; (b) governmental entities; and (c) the Court, The Court's immediate family, and Court staff. *Id.*

### B.  Settlement Consideration

The Settlement provides for a $7,250,000.00 non-reversionary cash Settlement Fund that will pay: (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Service Awards award by the Court to Class Representatives; and (4) any attorneys' fees and costs awarded by the Court to Class Counsel. *Id.* ¶ 73. Settlement Class Members may elect one of two types of Cash Payments and may also elect Credit Monitoring. *Id.* ¶ 76. Defendants agree to valuable relief through additional data security measures undertaken or planned to be. *Id.*

**1.** *Cash Payments* - Under the terms of the Settlement, Settlement Class Members may elect either Cash Payment A or Cash Payment B. Agreement ¶ 76.

#### a.  Cash Payment A –Documented Losses

Settlement Class Members may submit a Claim for a Cash Payment under this section for up to $5,000.00 per Settlement Cass Member upon presentment of reasonable documented losses related to the Data Security Incident. Agreement ¶ 76. To receive a documented loss payment, a Settlement Class Member must elect Cash Payment A on the Claim Form attesting under penalty of perjury to incurring documenting losses. *Id*. Settlement Class Members will be required to submit reasonable documentation supporting the losses. *Id.* Settlement Class Members shall not

be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendant BerryDunn or otherwise. *Id*. If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member's Claim will be treated as if he or she elected Cash Payment B. *Id*.

### b.  Cash Payment B – Flat Cash Payment

As an alternative to Cash Payment A above, a Settlement Class Member may elect to receive Cash Payment B, which is a flat cash payment in the amount of $100.00. *Id*.

**2.**    *Credit Monitoring* - In addition to electing a Cash Payment, Settlement Class Members may elect up to three years of three-bureau Credit Monitoring that will provide the following benefits: three-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services. *Id*.

***Pro Rata Adjustments on Cash Payments*** - Settlement Class Member Cash Payments will be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Agreement ¶ 77. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. *Id*. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring and then for Cash Payment A, and finally for cash payment B. *Id*. Any increases or decreases to Cash Payments will be on an equal percentage basis. In the unexpected event the value of Credit Monitoring on its own exhausts the amount of the Settlement

Fund, the length of the Credit Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund. *Id*.

**3.** ***Business Practice Changes*** - Plaintiffs have received assurances that Defendants have undertaken reasonable steps to further secure their systems and environments. Agreement ¶ 78. Defendants will provide a declaration attesting to the undertaken or planned data security enhancements at Plaintiffs' request. *Id*.

**4.** ***Releases*** – The Releasing Parties will Release the Released Parties for claims relating to the Data Security Incident. Regardless of whether they submit a Claim, Settlement Class Members who do not opt-out of the Settlement will release all claims, whether known or unknown, against Defendants and the other Released Parties. *Id*. § XIII.

**5.** ***The Notice Program, Claim Process, Opt-Outs, and Objection*****s**

The Parties agreed to use Angeion as the Settlement Administrator in this Action. *Id*. ¶ 81. The Settlement Administrator shall administer various aspects of the Settlement under the supervision of the Parties' counsel. *Id*. ¶ 83.

***Notice Program*** - Defendants will deliver the Class List to the Settlement Administrator within 10 days of Preliminary Approval. *Id*. ¶ 85. Within 30 days of Preliminary Approval, Postcard Notice will be sent to Settlement Class members to the last postal address that Defendants have on record for each Settlement Class member. *Id*. ¶ 86. The Settlement Administrator will perform reasonable address traces for undeliverable Postcard Notices.

The Postcard Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or

Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. *Id.* ¶ 87.

The Long Form Notice also shall include a procedure for Settlement Class members to opt-out of the Settlement Class, and the Postcard Notice shall direct Settlement Class members to review the Long Form Notice to obtain the opt-out instructions. *Id.* ¶ 89. The Long Form Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and the Postcard Notice shall direct Settlement Class members to review the Long Form Notice to obtain objection instructions. *Id.* The Notice Program shall be completed 60 days after Notice begins.

*Claims Process* - The timing of the Claims process is structured to ensure that all Settlement Class members have adequate time to review the terms of the Agreement, compile documents supporting their Claim if they are electing Cash Payment A, submit their Claims, and decide whether they would like to opt-out or object to the Settlement. Joint Decl. ¶ 31. Settlement Class members must submit their Claim Form (either by mail or online) to the Settlement Administrator by the Claim Form Deadline, which is 15 days before the initial scheduled Final Approval Hearing. Agreement ¶ 99. The Claim Form is written in plain language to facilitate ease in completion. Joint Decl. ¶ 33. The Settlement Administrator will review the Claim Forms and determine if they are complete and valid. Agreement ¶ 99.

*Opt-outs and Objections* - Settlement Class members will have up to 30 days before the Final Approval Hearing to object to or to submit a request to opt-out of the Settlement. *Id.* ¶¶ 51-52. Similar to the timing of the Claims process, the timing with regard to objections and requests to opt-out is structured to give Settlement Class members sufficient time to access and review the

Settlement documents—including Plaintiffs' Application for Attorneys' Fees, Costs, and Service Awards, which will be filed 45 days before the original date set for the Final Approval Hearing and posted on the Settlement website for Settlement Class member review. *Id.* ¶ 107.

### 6. *Service Awards, Attorneys' Fees and Costs*

*Service Awards* - The Settlement provides that Class Counsel will request reasonable Service Awards for the Class Representatives of up to $3,000.00 each. *Id.* ¶ 109. The Service Awards are meant to compensate the Class Representatives for their efforts on behalf of the Settlement Class, including serving as the named Plaintiffs, assisting in the investigation of the Action, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's many questions. Joint Decl. ¶ 39.

*Attorneys' Fees and Costs* - After agreeing to the material terms of the Settlement, Class Counsel negotiated attorneys' fees and costs as part of the total Settlement Class Member Benefits. Class Counsel intend to request attorneys' fees in an amount not to exceed 33.33% of the Settlement Fund. Agreement ¶ 100; Joint Decl. ¶ 34. Class Counsel will also seek reimbursement of its costs incurred in the Action. *Id.* The Notices will advise the Settlement Class that Class Counsel intends to request such awards and further information of how to object to the requests. Joint Decl. ¶ 36.

Plaintiffs will file their Motion for Final Approval of the Settlement, inclusive of their Application for Attorneys' Fees, Costs, and Service Awards, prior to Settlement Class members' deadline to opt-out of or object to the Settlement. ¶ 107.

### 7. *Funds Remaining After Distribution*

The Settlement is structured to exhaust the Settlement Fund. Joint Decl. ¶ 13.  In the event there are funds remaining from uncashed checks in the Settlement Fund within 45 days following

the 180-day check negotiation period, all remaining funds shall be distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court. Agreement ¶¶ 112.

### III.    THE PROPOSED SETLEMENT WARRANTS PRELIMINARY APPROVAL

#### A.  The Legal Standard for Preliminary Approval

The First Circuit maintains a strong policy favoring settlements, especially in class actions. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st Cir. 2009); *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) (commenting on the "overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved."); *see also Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 D.2d 169, 173 (1st Cir. 1983) (settlement agreements "will be upheld wherever possible because they are a means of amicably resolving doubts and preventing lawsuits"); *see also Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) ("Where the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable.").

Preliminary approval of a class action settlement is a low bar; the Court need only make an initial fairness evaluation that the Settlement is "within the range of final approval." Manual for Complex Litigation, Third, § 30.41 (1995); *see also Bryan C. v. Gagne Holmes*, No. 1:21-cv-00005, 2024 U.S. Dist. LEXIS 117213, at *10-11 (D. Me. July 3, 2024).

Federal Rule of Civil Procedure 23(e)(2) sets out three requirements for preliminary approval: "(A) the proposed class should be certified for the purpose of the settlement; (B) the settlement [should be] fair, reasonable and adequate; and (C) the proposed notice and notice plan [must] satisfy due process requirements." *Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*, No. 3:15-CV-30024-KAR, 2020 U.S. Dist. LEXIS 53643, 2020 WL 1495903, at *1 (D. Mass. Mar. 27, 2020) (citing Fed. R. Civ. P. 23(e)). Additionally, Fed R. Civ. P 23(g) requires "a court that

certifies a class [to] appoint class counsel" who "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).[3]

As explained below, the Court should conclude the above criteria are met.

**B.  The Proposed Settlement Is Fair, Reasonable and Adequate.**

A preliminary review of the fairness and adequacy factors demonstrates that the Settlement warrants Preliminary Approval under Rule 23(e)(2). The Settlement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's-length negotiations by competent counsel with the assistance of Judge Jones at mediation. Joint Dec. ¶ 12.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. *Id.* ¶ 14. Class Counsel believe the claims asserted are meritorious and Plaintiffs would prevail if this Action proceeded to trial. *Id.* ¶ 15. Defendants deny liability, believe they acted in good faith and in compliance with the law and would prevail in opposing class certification and on the merits at trial. *Id.* ¶ 16. With continued litigation, the putative class will undoubtedly have a long wait for their recovery, if it has one at all. *Id.* Thus, in Class Counsel's experience and informed judgment, the Settlement represents an excellent recovery, and the benefits outweigh the risks and uncertainties of continued litigation, including, the risks, time, and expenses associated with a trial and any appellate review. *Id.* ¶ 17.

**1.  The Settlement Class Has Been Vigorously Represented.**

District courts give great weight to the opinion and judgment of experienced counsel who conducted arm's-length negotiations. Here, Plaintiffs' counsel vigorously represented the Settlement Class and will continue to do so after Preliminary Approval and Final Approval. Joint

---

[3] *Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) ("Where the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable.").

Decl. ¶ 18. To date, Class Counsel have: (i) conducted a thorough pre-suit investigation that resulted in the preparation of a detailed complaint and later amended that pleading; (ii) gathered Plaintiffs' documents and reviewed other relevant class-related information; (iii) requested and reviewed pertinent information via informal discovery for mediation; (iv) consulted with experts, prepared written discovery, a 30(b)(6) notice, and a detailed mediation statement; (v) participated in mediation and settlement discussions, achieving a favorable Settlement for the Settlement Class; and (vi) negotiated a comprehensive Agreement that includes a robust Notice Program, well-crafted Notices and Claim Form, and an easy to understand Claims process. Joint Decl. ¶ 19. Additionally, Class Counsel have no conflicts of interest with the Settlement Class. *Id*. ¶ 20. Therefore, this factor supports Preliminary Approval. *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 36 n.12 ("The duty of adequate representation requires counsel to represent the class competently and vigorously and without conflicts of interest with the class.")

### 2. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations.

"In general, a district court will presume that a settlement is reasonable if the parties negotiated at arm's length and conducted sufficient discovery." *See Noll v. Flowers Foods Inc.*, No. 1:15-cv-00493, 2022 U.S. Dist. LEXIS 75349, at *16 (D. Me. Apr. 26, 2022) (citing *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)). The participation of an experienced mediator also supports a finding that the Settlement is fair, reasonable, and adequate. *See Anderson v. Team Prior, Inc*., No. 2:19-cv-00452, 2022 U.S. Dist. LEXIS 196144, at *13-14 (D. Me. Oct. 28, 2022) (finding the settlement was fair when it was achieved after months of arm's length negotiations by experienced counsel.). Here, the Settlement is the result of the Parties' arm's-length negotiations facilitated by experienced mediator Judge Jones. Moreover, the Parties' Counsel are all attorneys familiar with class action litigation; particularly experienced

in the litigation, certification, trial, and settlement of class actions, including data breach cases; and knowledgeable of the legal and factual issues at the center of this Action. Joint Dec. ¶ 20. Through informal discovery, Class Counsel were able to fully evaluate each side's respective position and participate in vigorous settlement negotiations that ultimately resulted in the Settlement. *Id.* ¶¶ 6, 18-22. Thus, Rule 23(e)(2)(B) is satisfied.

### 3.    The Settlement provides meaningful relief to the class.

The Settlement Fund offers real monetary benefits to Settlement Class Members who submit Valid Claims—a Cash Payment, Credit Monitoring, and data security enhancements by Defendants. *Id.* ¶ 17. Those enhancements encompass the same relief that would be sought following trial. *Bezdek*, 79 F. Supp. 3d at 346-47. Settlement Class Members and Defendants' future clients will benefit from these current and forward-looking business practice changes.

### a.    Risks of Further Litigation

Class Counsel are confident in the strength of Plaintiffs' case, but they are also pragmatic of the risks and challenges. Joint Decl. ¶ 22. There are uncertainties in litigating the case through class certification, summary judgment, and trial. *Id.* Class Counsel are also aware of inherent risks from any appeal and subsequent proceedings following a successful trial. *Id.* Under the circumstances, Class Counsel determined the Settlement outweighs the risks of continued litigation. *Id.* It provides substantial relief to Settlement Class Members without further delay and avoids the risk of an adverse judgment at trial or on appeal. Rule 23(e)(2)(C)(i) is satisfied.

### b.    Proposed Method of Distributing Relief

The detailed and comprehensive Notice Program provides the best notice to the Settlement Class and clearly explains how to submit a Claim. *See* § III(d), *infra*. The Settlement involves the use of a straightforward Claims process designed to maximize the number of Claims made and

allow Settlement Class Members to choose valuable Settlement benefits. *See* Agreement, Ex. 1 (Claim Form). Settlement Class Members who submit a Valid Claim will receive payment by electronic means or paper check. *Id.* Thus, Rule 23(e)(2)(C)(ii) is satisfied.

### c. Attorneys' Fees and Costs

Class Counsel intend to move the Court for an award of attorneys' fees and litigation costs. Fed. R. Civ. P. 23(e)(2)(C)(iii). Pursuant to the Agreement, Class Counsel may request an attorneys' fee award of up to 33.33% of the Settlement Fund, plus reimbursement of reasonable litigation costs. Such a request would be firmly within the range of approval. *See Conant v. FMC Corp.*, No. 2:19-CV-00296-JDL, 2023 U.S. Dist. LEXIS 6949, at *15 (D. Me. Sept. 1, 2020) (approving as reasonable an award of attorney's fees of one-third of common settlement fund); *O'Connor v. Oakhurst*, No. 2:14-00192-NT, 2018 U.S. Dist. LEXIS 102244, at *15 (D. Me. June 19, 2018) (same). The Notice Program will inform the Settlement Class that Class Counsel intend on seeking these amounts. Class Counsel will file an Application for Attorneys' fees, Costs, and Service Awards as part of Plaintiffs' Motion for Final Approval.

### 4. The Proposed Settlement Treats Class Members Equitably.

The proposed Settlement establishes a non-reversionary cash common fund, from which Cash Payments and Credit Monitoring account access will be distributed to Settlement Class Members who submit Valid Claims. *See* § V, *supra*. The Settlement does not provide preferential treatment to Plaintiffs or any segments of the proposed Settlement Class. *Id*. Settlement Class Members will be eligible to receive the same benefits and will be compensated the same way as other members of the respective Settlement Classes through fair, convenient, and effective Settlement Class Member Benefits. *Id*. Moreover, Defendants' data security enhancements referenced in the Settlement will equally benefit all Settlement Class members, even for those

members that choose not to submit Claims. *See* § V, *supra*. Appointing the Settlement Administrator reinforces the efficacy of the process because a qualified third party will be designated to manage the entire Settlement process. Therefore, this factor weighs in favor of Preliminary Approval. Fed. R. Civ. P. 23(e)(2)(D).

### C.  Certification of the Settlement Class is Appropriate.

For settlement purposes, Plaintiffs and Class Counsel respectfully request the Court certify the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). "To obtain class certification, the plaintiff must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b)." *Smilow v. S.W. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). When a settlement class is proposed, "[a] district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 38 (1st Cir. 2003). "Court approval is necessary to 'protect unnamed class members from unjust or unfair settlements affecting their rights." *Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452, 2022 U.S. Dist. LEXIS 71251, at *14 (D. Me. Apr. 19, 2022).  "[I]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000). The court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the Rule 23(a) and (b)(3) requirements are met. Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to opt-out, of their right to object and be heard on its fairness, and of the date, time, and place of the Final Approval Hearing. *See* MAN. FOR

COMP. LIT., 4TH §§ 21.632, 21.633 (2004). For the reasons set forth below, certification is appropriate. In accordance with Rule 23(e)(1), the Court should conclude that for settlement purposes, it is likely to certify the Settlement Class at Final Approval and approve the Settlement as fair, adequate, and reasonable.

### 1.    The Settlement Class satisfies the requirements of Rule 23(a)

The four requirements of Rule 23(a) are satisfied for settlement purposes.

***Numerosity*** - The numerosity requirement is satisfied because the Settlement Class has approximately two million members, and joinder of all is impracticable. Joint Dec. ¶ 23; *see* Fed. R. Civ. P. 23(a)(1). "[C]ourts in this circuit have generally found that a class of 40 or more individuals satisfies the numerosity requirement." *Michaud v. Monro Muffler Brake, Inc*., No. 2;12-cv-00353, 2015 U.S. Dist. LEXIS 32526, at *7 (D. Me. Mar. 17, 2015). Here there are approximately two million Settlement Class members.

***Commonality*** - "Commonality requires the Plaintiffs to demonstrate that the class members 'have suffered the same injury,'" and Plaintiffs' common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, Fed. R. Civ. P. 23(a)(2)'s commonality requirement is satisfied. Plaintiffs have asserted multiple questions of law and fact—centering on whether Defendants had unreasonable data security practices that failed to prevent the Data Security Incident—that Plaintiffs allege are common to the Settlement Class, are alleged by Plaintiffs to have injured all Settlement Class members in the same or similar way, and that Plaintiffs allege would generate common answers. Joint Dec. ¶ 24.

***Typicality*** - Fed. R. Civ. P. 23(a)(3) typicality is satisfied where the plaintiff's claims

"'arise from the same events or course of conduct as do the injuries of the class when plaintiff's claims and those of the class are based on the same legal theory.'" *Michaud*, 2015 U.S. Dist. LEXIS 32526, at *10. Typicality requires plaintiff's claims are common to the other class members "not necessarily identical." *Glynn v. Me. Oxy-Acetylene Supply Co*., No. 2:19-cv-00176, 2020 U.S. Dist. LEXIS 206663, at *8 (D. Me. Nov. 5, 2020). Here, as Plaintiffs' and absent Settlement Class members' claims all arise from the Data Security Incident, Plaintiffs allege they are typical of the entire Settlement Class..

*Adequacy.* Plaintiffs and Class Counsel also satisfy adequacy of representation. Fed. R. Civ. P. 23(a)(4) adequacy relates to: (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Bezdek*, 79 F. Supp. 3d at 339, *aff'd,* 809 F.2d 78 (1st Cir. 2015); *see also Marcoux v. Szwed*, No. 2:15-cv-093, 2016 U.S. Dist. LEXIS 136664, at *6-7 (D. Me. Oct. 3, 2016) (finding adequacy when "plaintiffs appear to align with the members of the class they seek to represent" and proposed class counsel has experience with class actions). Plaintiffs' interests are coextensive with, not antagonistic to, the Settlement Class' interests because Plaintiffs and absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Joint Dec. ¶ 25. Further, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel. *Id*. ¶ 26. Each is a leader in the class action field and each attorney has extensive experience prosecuting data breach class actions which has helped them to obtain the Settlement here. Joint Decl., Exhibits 1-3. Class Counsel has devoted substantial time and resources and will continue to do so through Final Approval of the Settlement. *Id.* ¶¶ 18-22, 27. Therefore, Plaintiffs and Class Counsel satisfy Rule 23(a)(4). Fed. R. Civ. P. 23(g)(1)(A)-(B) and Rule 23(e)(2)(A) are also satisfied.

**2.    The Settlement Class also satisfies the requirements of Rule 23(b)(3).**

Rule 23(b)(3) requires the Court to find that: (1) questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *Marcoux*, 2016 U.S. Dist. LEXIS 136664, at *7.

The predominance standard can be met if the common questions predominate, even if some individual issues remain. *Michaud*, 2015 U.S. Dist. LEXIS 32526, at *12-13 (citing *Smilow*, 323 F.2d at 40). Here, Rule 23(b)(3) predominance is satisfied for settlement purposes. Plaintiffs allege that the fact and liability questions common to all Settlement Class members outweighs any possible issues that are individual to some Settlement Class members. Joint Dec. ¶ 28.

Further, superiority is met when "a class mechanism to resolve these disputes is superior to other methods given the clear commonality of claims and the cost-sharing efficiencies of aggregating individual claims[.]" *Marcoux*, 2016 U.S. Dist. LEXIS 136664, at *10; *see also Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 66-67 (1st Cir. 2010) ("Rule 23 has to be read to authorize class actions in some set of cases where seriatim litigation would promise such modest recoveries as to be economically impracticable."). Here, resolution of thousands of claims in one action is far superior to individual lawsuits, promoting consistency and efficiency of adjudication. *Id*. ¶ 45.

For these reasons, the Court should certify the Settlement Class.

**D.  The Court Should Approve the Proposed Notice Program**

Fed. R. Civ. P. 23(e)(1)(B) states: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." The best practicable notice is that

18

which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, the notice must state "in plain language the certified class definition, what the class action is about, what the Agreement does, and how to be heard on the matter and contact class counsel." *Bryan*, 2024 U.S. Dist. LEXIS 117213, at *20; *see also Michaud*, 2015 U.S. Dist. LEXIS 32526, at *33 (notice should enable potential class members "to make informed decisions about whether to participate" in the settlement); Manual for Complex Litig., Fourth, § 21.312 (2004).

The Notice Program satisfies these criteria. It will inform Settlement Class members of the Settlement's substantive terms, advise Settlement Class members of their options for remaining in the Settlement Class or for opting-out of the Settlement Class; for submitting Claims; for objecting to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards; and how to obtain additional information about the Settlement. *See* Joint Decl. ¶¶ 29-33. The Notice Program is designed to directly reach a very high percentage of Settlement Class members with direct Postcard Notice. *Id.* Therefore, the Court should approve the Notice Program and the form and content of the Notices and Claim Form. Agreement, Exs. 1-3.

## IV.    PROPOSED SCHEDULE OF EVENTS AND CONCLUSION

In connection with Preliminary Approval, the Court should also set the Final Approval Hearing date and time. Other deadlines in the approval process, including the deadlines for opting-out of or objecting to the Settlement, will be determined based on the initial scheduled Final Approval Hearing date. Class Counsel propose the following schedule:

| | |
|---|---|
| **Class List Delivered to Settlement Administrator** | 10 days after Preliminary Approval Oder |

| **Notice Program Begins** | 30 days after Preliminary Approval Order |
|---|---|
| **Notice Program Complete** | 60 days before the initial Final Approval Hearing date |
| **Deadline to file Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards** | 45 days before the initial Final Approval Hearing date |
| **Opt-Out Deadline** | 30 days before the initial scheduled Final Approval Hearing date |
| **Objection Deadline** | 30 days before the initial scheduled Final Approval Hearing date |
| **Deadline to Respond to Objections** | 15 days before the initial scheduled Final Approval Hearing date |
| **Deadline to Submit Claim Forms** | 15 days before the initial scheduled Final Approval Hearing |
| **Final Approval Hearing** | _____ __, 2025, at ____ am/pm. |

Based on the foregoing, Plaintiffs and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim process; (5) approve the opt-out and objection procedures set forth in the Notice Program; (6) appoint the plaintiffs identified in paragraph of 29 of the Agreement as Class Representatives; (7) appoint as Class Counsel Jeff Ostrow, Mason Barney, and Bryan Bleichner; (8) appoint Angeion as the Settlement Administrator; (9) continue to stay the Action pending Final Approval; (10) enjoin and bar all members of the Settlement Class from continuing in any litigation or asserting any claims against Defendants and the other Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision to grant Final Approval of the Settlement; and (11) schedule a Final Approval Hearing (during the week of June 2, 2025 or as soon thereafter).

A proposed Preliminary Approval Order is attached as ***Exhibit C***.

Dated: December 4, 2024.                Respectfully submitted,

                                        /s/ *Jeff Ostrow*
                                        Jeffrey Ostrow (pro hac vice)
                                        **KOPELOWITZ OSTROW P.A.**
                                        One West Las Olas Blvd., Suite 500
                                        Fort Lauderdale, FL 33301
                                        Tel: 954-332-4200
                                        ostrow@kolawyers.com

                                        Mason A. Barney (pro hac vice)
                                        Tyler J. Bean (pro hac vice)
                                        **SIRI & GLIMSTAD LLP**
                                        745 Fifth Avenue, Suite 500
                                        New York, NY 10151
                                        Tel: 212-532-1091
                                        mbarney@sirillp.com
                                        tbean@sirillp.com

                                        Bryan Bleichner (pro hac vice)
                                        **CHESTNUT CAMBRONNE P.A.**
                                        100 Washington Ave. South, Ste. 1700
                                        Minneapolis, MN 55401
                                        Tel: 612-339-7300
                                        bbleichner@chestnutcambronne.com

                                        *Counsel for Plaintiffs and the Settlement Class*


## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2024, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system.

                                        /s/ *Jeff Ostrow*