**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: Berry, Dunn, McNeil & Parker Data Security Incident Litigation | Lead Case No. 2:24-cv-00146-JAW |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS AND MEMORANDUM IN SUPPORT**

Plaintiffs[1] and Class Counsel respectfully submit this Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards and Memorandum in Support.

## I.    INTRODUCTION

On December 12, 2024, the Court granted Preliminary Approval of the Settlement between Plaintiffs and Defendants BerryDunn and Reliable, and ordered Notice be given to the Settlement Class. (Dkt. No. 71). Following mediation and extensive arms'-length negotiations, the Parties reached a Settlement providing substantial relief for Plaintiffs and the Settlement Class. The Settlement will fully and finally resolve all claims in the Action, alleging Defendants' inadequate data security practices allowed hackers to potentially access the Private Information, including Social Security numbers and driver's licenses numbers, of approximately two million individuals. Under the proposed Settlement, Defendants have agreed to pay $7,250,000.00 ($6,325,000.00 from or on behalf of Defendant BerryDunn and $925,000.00 from or on behalf of Defendant Reliable) for the Settlement Class.

The Settlement provides for significant monetary and non-monetary relief for all Settlement

---

[1] All capitalized terms herein shall have the same meaning as those defined in Section II of the Settlement Agreement and Releases attached as *Exhibit A*.

Class Members who submit Valid Claims. The monetary relief includes Cash Payment A, which is reimbursement for documented losses up to $5,000.00, or Cash Payment B, which is an estimated flat cash payment of $100.00, in lieu of Cash Payment A. In addition to selecting a Cash Payment, Settlement Class Members may elect to enroll in up to three years of free three-bureau Credit Monitoring. To further benefit the Settlement Class, Plaintiffs and Class Counsel also confirmed that Defendants implemented data security enhancements at considerable cost to Defendants. The Settlement Fund will also be used to pay all Settlement Administration Costs, any Court-awarded attorneys' fees and costs to Class Counsel, and any Court-awarded Service Awards to the Class Representatives.

After Preliminary Approval, the Settlement Administrator disseminated Notice to the Settlement Class. Direct individual Notice was provided to Settlement Class members via first-class mail and reached 90% of the Class, easily meeting the due process standard. *See* Admin Declaration ("Admin. Decl."), attached hereto as ***Exhibit C***, ¶ 28. Out of approximately 2,204,639 Settlement Class members, to date, only 28 have opted-out and none have objected. *Id.* ¶¶ 23-24. The Settlement Class' overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate.

Class Counsel should be awarded $2,416,666.66 for attorneys' fees (33.33% of the Settlement Fund) and $9,772.33 for litigation costs. The Class Representatives should each be awarded a $3,000.00 Service Award.

For the reasons set forth herein, the Settlement meets all Final Approval criteria and for awarding attorneys' fees and costs and Service Awards.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Defendant Berry Dunn is a leading national professional services firm providing assurance, tax, and consulting services to businesses, nonprofits, and government agencies throughout the United

States and its territories. Agreement ¶ 1. Defendant Reliable is a technology consulting company that offers services to its customers, including, but not limited to, cloud hosting, managed services, information technology consulting, and security. Defendant BerryDunn was a client of Defendant Reliable. *Id.* ¶ 2.

As a necessary part of its business, Defendant BerryDunn collects, maintains, and stores Private Information of its clients, including, but not limited to, names, email addresses, mailing addresses, dates of birth, Social Security numbers, and individual health insurance policy numbers. *Id.* ¶ 3. On or about April 25, 2024, Defendant BerryDunn filed an official notice of data security incident with the Office of Maine Attorney General. *Id.* ¶ 5. At or around the same time, Defendant BerryDunn issued notice of data security incident letters to individuals whose information may have been potentially accessible as a result of the Data Security Incident. *Id.* The notice letters explained Defendant Reliable received notice of unusual activity on or about September 14, 2023. *Id.* ¶ 6. An investigation revealed an unauthorized party had access to certain files containing sensitive information related to Defendant BerryDunn's Health Analytics Practice Group. *Id.*

As a result of the Data Security Incident, Defendants BerryDunn and Reliable were named in 11 putative class action lawsuits. Plaintiffs in these Related Actions conferred and agreed to move to consolidate the cases, and to appoint Interim Co-Lead Class Counsel. (Dkt. No. 6). Thereafter, the Court consolidated the Related Actions and appointed Jeff Ostrow, Mason Barney, and Bryan Bleichner as Interim Co-Lead Class Counsel ("Class Counsel"). (Dkt. No. 8).

On June 18, 2024, Plaintiffs filed an Amended Consolidated Class Action Complaint adding Defendant Reliable as an additional defendant. (Dkt. No. 60). Thereafter, Class Counsel prepared written discovery, including interrogatories and requests for production, a comprehensive Fed. R. Civ. P. 30(b)(6) deposition notice, prepared an extensive protocol for discovery involving electronically stored information, and a protective order. *See* Joint Declaration of Class Counsel in Support of

Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards ("Joint Decl."), attached as **_Exhibit B_**, at ¶ 15.

Around the same time, the Parties began discussing possible resolution and scheduled a mediation with the Honorable David E. Jones (Ret.). *Id.*. Before mediation, Plaintiffs propounded informal discovery requests to learn as much as possible about the Data Security Incident and the scope of the class. *Id.* Through this informal discovery, Plaintiffs evaluated the merits of Defendants' respective positions. *Id.* The Parties also exchanged mediation briefs outlining their positions with respect to liability, damages, and settlement-related issues. *Id.* The Parties mediated on September 23, 2024, and after a full day of negotiations and subsequent days of negotiations, agreed upon the material terms of a settlement. *Id.* ¶ 17. Thereafter, on September 30, 2024, the Parties filed a Notice of Classwide Settlement. (Dkt. No. 67). Plaintiffs filed their Unopposed Motion for Preliminary Approval of the Class Action Settlement on December 4, 2024, and this Court entered its Preliminary Approval Order on December 12, 2024. (Dkt. Nos. 70-71).

## III.    SUMMARY OF THE SETTLEMENT AND BENEFITS

The following is a summary of the material terms of the Settlement.

### A.  Settlement Class

The proposed Settlement establishes the following Settlement Class: All persons in the United States whose Private Information was potentially accessible as a result of the Data Security Incident, including those who were sent a notification from Defendant BerryDunn that their Private Information was potentially accessible as a result of the Data Security Incident. Agreement ¶ 66. The Settlement Class excludes all (a) all persons who are governing board members of the Defendants; (b) governmental entities; and (c) the Court, The Court's immediate family, and Court staff. *Id.*

### B.  Settlement Consideration

If approved, the Settlement requires Defendants to create a non-reversionary $7,250,000.00

cash Settlement Fund. Agreement ¶ 73. Settlement Class Members may select one of two types of Cash Payments and may also elect Credit Monitoring. *Id.* ¶ 76. Defendants have also confirmed additional data security measures they have undertaken or plan to undertake. *Id.* ¶ 79.

**_Cash Payments._** Settlement Class Members may select either Cash Payment A or Cash Payment B. Agreement ¶ 76.

### Cash Payment A – Documented Losses

Settlement Class Members may submit a Claim Form selecting Cash Payment A for up to $5,000.00 per Settlement Class Member upon presentment of reasonable documented losses related to the Data Security Incident. *Id.* ¶ 76. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notification letter provided by Defendant BerryDunn, or otherwise. *Id.* If a Settlement Class Member does not submit reasonable documentation supporting a loss, or if their Claim is rejected by the Settlement Administrator for any reason, and the Settlement Class Member fails to cure his or her Claim, the Claim will be rejected and the Settlement Class Member's Claim will be treated as if he or she selected Cash Payment B. *Id.*

### Cash Payment B – Flat Cash Payment

As an alternative to Cash Payment A above, a Settlement Class Member may select Cash Payment B, which is a flat cash payment in the estimated amount of $100.00, subject to *pro rata* adjustments discussed below. *Id.*

**_Credit Monitoring._** In addition to selecting a Cash Payment, Settlement Class Members may elect to receive up to three years of free three-bureau Credit Monitoring that will provide the following benefits: dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services. *Id.*

*__Pro Rata Adjustments on Cash Payments.__* Settlement Class Member Cash Payments will be subject to a *pro rata* increase from the Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Agreement ¶ 77. Similarly, in the event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. *Id.* For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first for payment of Credit Monitoring and then for Cash Payment A, and finally for Cash Payment B. *Id.* Any increases or decreases to Cash Payments will be on an equal percentage basis. In the unexpected event the value of Credit Monitoring on its own exhausts the amount of the Settlement Fund, the length of the Credit Monitoring provided will be reduced as necessary to bring the cost within the Settlement Fund. *Id.*

*__Business Practice Changes.__* Plaintiffs have received assurances that Defendants have undertaken reasonable steps to further secure their systems and environments. Agreement ¶ 79. Defendants will provide a declaration attesting to the undertaken or planned data security enhancements at Plaintiffs' request. *Id.*

### C. Residual Funds

The Settlement is designed to exhaust the Settlement Fund. *Id.* ¶ 113. In the event there are funds remaining from uncashed checks in the Settlement Fund within 45 days following the 180-day check negotiation period, a subsequent payment will be evenly made to all Settlement Class Members with approved claims for Cash Payments who cashed or deposited the initial payment they received, provided the average check amount is equal to or greater than $3.00. *Id.* The distribution of this remaining Net Settlement Fund shall continue until the average check or digital payment in a distribution is less than $3.00, whereupon all remaining funds shall be distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court. *Id.* The Parties propose the Electronic Privacy Information Center (https://epic.org/about/) to be the *cy pres* recipient.

4911-6314-1945, v. 1

### D. Attorneys' Fees, Costs, and Service Awards

Pursuant to the Agreement, Plaintiffs request an attorneys' fee award of $2,416,666.66 which represents one third of the total Settlement Fund, along with reimbursement of reasonable and necessary litigation costs in the amount of $9,772.33. Agreement ¶ 111; Joint Decl. ¶ 24. Plaintiffs also request Service Awards in the amount of $3,000.00 for each Class Representative (for a total of $45,000). Agreement ¶ 110. The awards will be paid out of the Settlement Fund. Agreement ¶¶ 110-11. The Notices sent to Settlement Class members listed the attorneys' fees and Service Awards, and not a single Settlement Class member has objected to the amounts sought. Admin Decl. Ex. 3.

## IV.     NOTICE PROGRAM, CLAIM PROCESS, OPT-OUTS AND OBJECTIONS

### A. Notice Program

After this Court entered the Preliminary Approval Order, the Settlement Administrator successfully disseminated Notice to the Settlement Class beginning on January 10, 2025. Pursuant to the Preliminary Approval Order, direct Postcard Notice timely and properly reached 90% of the 2,204,639 Settlement Class members. Admin. Decl.") ¶ 28. Any Postcard Notices returned undeliverable with a USPS forwarding addresses were re-mailed to those addresses. *Id.* ¶ 19. Postcard Notices returned without a forwarding address were subjected to an address verification search for an updated address and were subsequently re-mailed to those addresses. *Id.*

Pursuant to the Notice Program, downloadable copies of the Agreement, Preliminary Approval Order, Long Form Notice, and Claim Form were made available to the Settlement Class members on the Settlement Website, *www.bdsettlement.com.* Admin. Decl. ¶ 21. The Settlement Website went live on January 9, 2025, and contains Settlement information, including answers to frequently asked questions, Settlement Administrator contact information, and important dates such as the Final Approval Hearing date, Claim Form Deadline, and the last day of the Objection Period and Opt-Out Period. *Id.* As of April 22, 2025, there have been 115,328 visits to the Settlement Website. *Id.*

On January 10, 2025, the Settlement Administrator established a toll-free hotline that utilized an interactive voice response system to provide Settlement Class members with responses to frequently asked questions and to provide essential Settlement information. *Id.* ¶ 22. As of April 22, 2025, the hotline had received 14,968 calls. *Id.*

### B. Claim Process

The timing of the Claim process was structured to ensure that all Settlement Class members had adequate time to review the terms of the Settlement, compile documents supporting their Claim, and to decide whether to submit a Claim, opt-out of, or object to the Settlement. A Settlement Class Member may submit a Claim even if objecting. The Claim process is straightforward, and Settlement Class Members are able to submit Claims either through the Settlement Website or by hard copy mailed to the Settlement Administrator. Agreement ¶ 72. As of April 22, 2025, the Settlement Administrator had received 240,733 Claim Forms. Admin. Decl. ¶ 23. Settlement Class Members continue to submit Claim Forms and may do so until May 22, 2025. Claim Form submissions are still subject to final audits, including the full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court about the number of Claims at the Final Approval Hearing.

### C. Opt-Outs and Objections

The Objection and Opt-Out Periods end on May 7, 2025. Admin. Decl. ¶ 24. As of April 22, 2025, there have been only 28 opt-outs (0.001% of the Settlement Class) and no objections received. Admin. Decl. ¶ 25.

## V.    THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT

### A. Rule 23(e)(2)'s Factors Weigh in Favor of Final Approval

As a matter of public policy, settlement is a highly favored means of resolving disputes—particularly in complex cases where substantial judicial resources can be conserved by avoiding

litigation. *See U.S. v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000); *see also Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 (1st Cir. 1983) (quoting *Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir.1975)) (settlement agreements "will be upheld wherever possible because they are a means of amicably resolving doubts and preventing lawsuits"); *Jean-Pierre v. J&L Cable TV Servs.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (quoting *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass 2005)) ("the law favors class action settlements"); *Lazar v. Pierce*, 757 F. 2d 435, 440 (1st Cir. 1985) ("we should point to the overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved").

Class action settlements must be approved by the Court pursuant to Fed. R. Civ. P. 23(e). Federal Rule of Civil Procedure 23(e)(2) sets forth the following final approval factors the court must consider when determining if the class action settlement is "fair, reasonable, and adequate."

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Jean-Pierre,* 538 F. Supp. 3d at 212-13. Considering these factors, the Settlement terms warrant Final Approval. Indeed, the proposed Settlement is squarely within the range of reasonableness and meets the criteria that is identified in Rule 23(e). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002).

After the Parties exchanged information sufficient to assess the strengths and weaknesses of their positions, the Settlement was negotiated at arm's-length with the assistance of a well-respected and experienced mediator. Joint Decl. ¶ 16. A presumption of fairness is appropriate in the case of settlements ensuing from arm's length negotiations. *Howe v. Townsend (In re Pharm. Indus. Average*

*Wholesale Price Litig.)*, 588 F.3d 24, 32-33 (1st Cir. 2009); *Glynn v. Maine Oxy-Acetylene Supply Co.*, No. 2:19-cv-00176, 2022 U.S. Dist. LEXIS 224020 at *11 (D. Me. Dec. 13, 2022). This Settlement is the product of a full day of mediation with Judge Jones and additional days of negotiation before an agreement was reached. Joint Decl. ¶ 17. While the Parties were respectful and professional throughout the negotiations, the Settlement was indisputably the result of an adversarial, arm's length negotiation.

The Settlement relief is substantial and easily satisfies the adequacy requirement. Settlement Class Members benefit directly from the Settlement in many ways, including compensation for documented losses or a flat cash payment, and three years of three-bureau Credit Monitoring. Agreement ¶ 76. Defendants also confirmed security enhancements. *Id.* ¶ 79. The Settlement's value is guaranteed, whereas the chances of prevailing on the merits are uncertain. Joint Decl. ¶ 12.

As outlined in the Motion for Preliminary Approval, Plaintiffs faced significant risks and costs should they have continued to litigate. Data breach cases are inherently complex, with novel issues and rapidly evolving laws posing substantial hurdles even at the pleading stage. *See, e.g., Hashemi v. Bosley, Inc.*, No. 21-cv-946, 2022 U.S. Dist. LEXIS 210946, at *9 (C.D. Cal. Nov. 21, 2022) (explaining that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415- CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at *3 (D. Colo. Dec. 16, 2019) (Data breach cases . . . are particularly risky, expensive and complex" due at least in part to the cutting-edge, innovative nature of data breach litigation and the rapidly evolving law; *see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-MD-2800, 2020 U.S. Dist. LEXIS 118209, at *240 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom.* (in data breach "[t]he law . . . remains uncertain and the applicable legal principles have continued to evolve"). For these reasons, data breach cases like this one generally face substantial class certification hurdles. *See,*

4911-6314-1945, v. 1

*e.g., In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 U.S. Dist. LEXIS 86740, at *93 (D.S.C. May 14, 2024) (denying class certification after concluding proposed class and sub-classes were not ascertainable); *In Re: Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 U.S. Dist. LEXIS 234064 , at *47 (D.S.C. Dec. 30, 2024) (denying motion for leave to file a renewed motion for class certification); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification). Maintaining class certification is often an equally challenging hurdle. *See e.g.*, *Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. Aug. 18, 2023) (decertifying classes). Further, if the litigation were to continue, Defendants would vigorously defend the case, and the litigation could potentially span for years. Joint Decl. ¶ 13. Considering all of this, Plaintiffs' likelihood of success at trial is far from certain, and the recovery here is more than adequate under the circumstances. *Id.*

There was also the risk that Plaintiffs' claims would not have survived, or survived in full, on a class-wide basis after a motion to dismiss, motion for summary judgment, and/or Daubert motions on damages methodologies, among other motions. *Id.* ¶ 9. To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unpaved, particularly in the area of damages. *See, e.g., Southern Independent Bank v. Fred's, Inc.*, No. 2:15- CV-799-WKW, 2019 U.S. Dist. LEXIS 40036, at *3-4 (M.D. Ala. Mar. 13, 2019) (ruling under *Daubert* that causation not satisfied for class certification purposes in data breach action). Indeed, the damages methodologies, while theoretically sound in Plaintiffs' view, remain largely untested in disputed class certification setting and unproven in front of a jury. Joint Decl. ¶ 9.

Time was also not on the Settlement Class members' side. While the Parties would be litigating the foregoing issues, potentially for years to come, Settlement Class members would not have received the benefits afforded by the Settlement, including the protection of credit monitoring offered by the

instant Settlement. Joint Decl. ¶ 10. Thus, a reasonable settlement is more practical than facing the risks of no recovery at all after years of litigation. *Id.*

In contrast to the risk, cost, and delay posed by proceeding to trial, if it is approved, the Settlement will provide certain, substantial, and immediate relief to the Settlement Class. *Id.* ¶ 8. It ensures that Settlement Class Members with Valid Claims will receive guaranteed compensation now, provides Settlement Class Members with access to valuable and useful Credit Monitoring services and other benefits that may not have been available at trial, and confirms the implementation of security measures to protect Settlement Class Member's data that may remain with BerryDunn. *Id.* Based on the foregoing, it is Class Counsel's well-informed opinion that, given the uncertainty and further substantial risk and expense of pursuing the Action through contested class certification proceedings, trial and appeal, the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *Id.*

The Agreement treats Settlement Class Members equitably. The Settlement Class Members are all able to select from the two above-described options to obtain the benefit best tailored to their individual circumstances, and all Settlement Class Members are offered the ability to select a $100 cash payment (subject to *pro rata* adjustment) without submitting any documented losses. All Settlement Class Members are eligible to elect the same Credit Monitoring benefit as well.

Plaintiffs and Class Counsel have successfully represented the Class, completed a successful arm's length negotiation that secured adequate relief, and Settlement Class Members are treated equitably. The Court should therefore approve this Settlement.

### B. The *Grinnell* Factors, or a Similar Analysis, Also Weigh in Favor of Final Approval

Courts in this Circuit also consider the following "*Grinnell*" factors for final approval:

(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the  proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants

to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*New Eng. Carpenters Health Benefits Fund v. First DataBank, Inc.,* 602 F. Supp. 2d 277, 280 (D. Mass. 2009) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974)); *see also Carlson v. Target Enter.,* 447 F. Supp. 3d 1, 3 (D. Mass. 2020) (using the *Grinnell* factors); *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.,* No. 12-MD-2320-PB, 2015 U.S. Dist. LEXIS 154602, at *29 (D.N.H. Nov. 16, 2015) ("Courts in this circuit, however, have often relied on the Second Circuit's *Grinnell* factors, or some variation on those factors."). Courts, however, have broad discretion to apply fewer factors where appropriate.

As the Court noted in *Colgate-Palmolive Softsoap,* "Although I have discretion to apply *Grinnell* verbatim, I employ a more concise list." 2015 U.S. Dist. LEXIS 154602, at *29. The list in *Colgate-Palmolive Softsoap* is quite similar to a list employed previously by a Court in this District.

> Specifically, the appellate courts consider some or all of the following factors: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration.

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 216 F.R.D. 197, 206 (D. Me. 2003) (citing *Grinnell,* amongst other cases). Plaintiffs, therefore, address these factors as the closest precedent for this District.

### 1. *The Comparison of the Proposed Settlement with the Likely Result of Litigation*

This factor is difficult in that there is little to no empirical evidence to determine how a jury would react to the claims at issue. Moreover, as discussed *supra,* the rapidly evolving world of data breach litigation demonstrates that there is substantial risk that this matter would ever get to trial.

"While it is possible to hypothesize about larger amounts that might have been recovered. . . '[t]he evaluating court must . . . guard against demanding too large a settlement based on its view of

13

the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'" *In re Lupron Mktg. and Sales Practices Litig.,* 228 F.R.D. 75, 97-98 (D. Mass 2005) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015), *aff'd,* 809 F.3d 78 (1st Cir. 2015) (echoing the maxim that settlements are compromises and noting that "[t]he class members' . . . worst-case scenario, and a plausible one, is that they would receive no damages award at all").

Here, despite the serious risks of continued litigation, which also factors into the sixth element, including the risk of no recovery at all, the Settlement offers substantial and concrete relief to the Settlement Class. The Settlement Class Members can choose from either a $100 cash payment or obtain reimbursement for documented losses of up to $5,000.00—in addition to three years of Credit Monitoring. *Cf. Bezdek*, 79 F. Supp. 3d at 346 (determining, after noting the obstacles facing the class members if they were to continue litigating the case that "[t]he relatively modest settlement payout that has crystallized following notice is a preferable outcome for class members").

### 2. *Reaction of the Class to the Settlement*

The Settlement has received a positive reception from the Settlement Class. The 240,733 Claim Forms submitted thus far represent a roughly 10% claims rate. Admin Decl. ¶ 23. This far exceeds the claims rates seen in most data breach class actions. *See, e.g., In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 U.S. Dist. LEXIS 65200, at *71 (E.D. Pa. Apr. 9, 2024) (2.56% claims rate "actually compares favorably to the claims rates in other data breach class actions"); *Carter*, 2023 U.S. Dist. LEXIS 210744 at *15 (1.6% claims rate "is in line with claims rates in other data breach class action settlements" and collecting cases with claims rates between 0.83% and "about two percent"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (1.8% claims rate reflects a positive reaction by the class). As such, the claims rate, which is expected to increase, should be seen as a favorable sign that the Settlement Class approves of this Settlement.

Likewise, out of 2,204,639 Settlement Class members, no one has objected to the Settlement so far, and just 28 Settlement Class members opted-out. Admin. Decl. ¶ 24. These numbers reaffirm the Court's preliminary conclusion that the Settlement is fair, reasonable, and adequate.

### 3. *Stage of the Litigation and the Amount of Discovery Completed*

Like the third *Grinnell* factor, this element involves "the parties' knowledge of the strengths and weaknesses of the various claims in the case[.]" Indeed, "the Court need not find that the parties have engaged in extensive formal discovery to approve the settlement. Rather, [t]he Court must find that counsel had sufficient information to act intelligently on behalf of the class." *Padro v. Astrue*, 11-CV-1788 CBA RLM, 2013 U.S. Dist. LEXIS 150494, at *15-16 (E.D.N.Y. Oct. 18, 2013) (internal citations and quotation omitted). The Parties exchanged sufficient informal discovery to understand the strengths and weaknesses of their respective claims and defenses. Joint Decl. ¶ 15.   The Court can thus "find that the parties had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation, including [cases of this type]." *Bezdek*, 79 F. Supp. 3d at 348.

### 4. *Quality of Counsel*

"Finally, in evaluating whether the settlement is fair, reasonable, and adequate, the Court also gives due weight to the judgment of class counsel." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *176. As this Court found at Preliminary Approval, "the Parties' Counsel are all attorneys familiar with class action litigation; particularly experienced in the litigation, certification, trial, and settlement of class actions, including data breach cases; and knowledgeable of the legal and factual issues at the center of this Action." Dkt. No. 70 at 12-13. Defendants are represented by experienced counsel who are worthy, highly- competent adversaries from well-respected law firms that have between them over 2,500 lawyers at their disposal. *See Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) ("Given the quality of defense counsel from

prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results."). This factor favors Final Approval.

### 5. *Conduct of the Negotiations*

The Parties mediated on September 23, 2024, and following additional negotiations were able to reach an agreement on September 30, 2024. As discussed above, there is no question this was an arm's length negotiation with an experienced mediator, and was fundamentally adversarial but still professional. There is no hint of collusion or bad faith. Plaintiffs each signed the Agreement, endorsing the negotiations of their counsel. This factor favors Final Approval.

### 6. *Prospects of the Case, Including Risk, Complexity, Expense and Duration*

As discussed above with respect to the Rule 23(e)(2) factors, there is substantial risk and complexity in a consumer data breach action, and success for Plaintiffs is far from assured. In finding a similar factor favored approval in a data breach context, a court noted the following:

> The risks of litigation for both parties and the costs of proceeding to trial support a finding that the settlement is reasonable. As the plaintiffs point out, lengthy discovery, including the deposing of expert witnesses on damages, motions for summary judgment, and a motion for class certification would occur before final resolution could take place. The calculation of damages at trial is uncertain given that law in this area is developing.

*In re Novant Health, Inc.*, 1:22-CV-697, 2024 U.S. Dist. LEXIS 107949, at *20 (M.D.N.C. June 17, 2024). Given the uncertainty in data breach litigation, a real likelihood of an appeal from the party that does not prevail could extend the time and expense for resolution beyond that which makes economic sense for the Plaintiffs and the Settlement Class. Joint Decl. ¶ 11. This factor favors Final Approval.

Because the Rule 23(e)(2) factors and the other factors courts in this District and Circuit follow are satisfied, Final Approval of the Settlement should be granted.

## VI.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

Settlement classes are routinely certified in data breach cases.[2] There is nothing unique about this Action that would counsel otherwise. In the Preliminary Approval Order, the Court provisionally certified the Settlement Class. Dkt. No. 70.  Nothing has changed relative to the Fed. R. Civ. P. 23(a) and (b)(3) factors since Preliminary Approval. For Settlement purposes, the Settlement Class still satisfies numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. For these reasons, the Court should finally certify the Settlement Class, finally appoint Plaintiffs as the Class Representatives, and finally appoint Jeff Ostrow, Mason Barney, and Bryan Bleichner as Class Counsel.

## VII.    NOTICE TO THE SETTLEMENT CLASS COMPLIED WITH DUE PROCESS AND RULE 23

The Court previously approved the Notice Program and found it satisfied all requirements of due process and Rule 23. *See, e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class). The Notice Program, which provided the best notice practicable under the circumstances, has been successfully implemented and reached approximately 90% of the Settlement Class. *See* Admin Decl. ¶ 28, ("In my professional opinion, the Notice Program provided full and proper notice to Settlement Class members and was the best practicable notice under the circumstances, fulfilling all due process requirements, and fully comporting with the Fed. R. Civ. P. 23."). The Settlement Website allowed visitors to download the Long Form Notice, the Claim

---

[2] *See, e.g., Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 U.S. Dist. LEXIS 252202 (E.D. Va. Nov. 19, 2021); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. l:16- cv-03025, 2019, U.S. Dist. LEXIS 120558 (D. Md. July 15, 2019); *In re Equifax Inc. Customer Data Security Breach Litig.*, 2020 U.S. Dist. LEXIS 118209; *Huang v. Spector*, 142 S. Ct. 431 (2021), and cert denied sub nom.; *Watkins v. Spector*, 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 172-74 (D. Md. 2022) (certifying certain statewide classes; Rule 23(f) appeal granted).

4911-6314-1945, v. 1

Form, and Court documents such as the Complaint and full Agreement, as well as allowing them to submit Claims and address updates electronically, find answers to frequently asked questions, view important dates and deadlines, and contact the Settlement Administrator. *Id.* ¶ 21. The fact the Settlement Website has to date received 115,328 visits, there have been 14,968 calls to the toll-free number, and 240,733 Claims have been submitted shows the Notice Program's effectiveness. *Id.* 23.

## VIII. APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A. Legal Standard for Attorneys' Fees

Federal Rule of Civil Procedure 23(h) provides: "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." When awarding attorneys' fees, the First Circuit follows the common fund doctrine. "Under that doctrine, "attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *Bezdek*, 79 F. Supp. 3d at 349 ("Attorneys in a certified class action may be awarded reasonable fees and costs."). "The First Circuit recognizes two general methods for awarding attorney's fees in class actions: (1) the 'percentage of the fund' ('POF') method; and (2) the 'lodestar' method." *O'Connor v. Oakhurst Dairy*, No. 2:14-cv-00192, 2018 U.S. Dist. LEXIS 102244, at *10 (D. Me. June 19, 2018). The preferred method in class action cases in the First Circuit, especially those involving a common fund, is the percentage-of-the-fund method because of its distinct advantages. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003); *O'Connor*, 2018 U.S. Dist. LEXIS 102244, at *10 (same).

In contingent fee cases such as this, the "percentage of the fund" approach is preferred because it is easy to administer, reduces the possibilities of collateral disputes, enhances judicial efficiency, is less taxing on judicial resources, and "better approximates the workings of the

marketplace." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) ("[percentage of fund] method has certain distinct advantages over the lodestar method" including that it "is often less burdensome to administer and it enhances efficiency"); *see also Carlson v. Target Enter.*, 447 F. Supp. 3d 1, 3 (D. Mass 2020) ("In the First Circuit, the percentage of fund methodology, . . . is favored and appropriate in common fund cases."). There is no requirement to apply a lodestar analysis in a class action settlement. *See Scovil v. FedEx Ground Package Systems, Inc.*, No. 1:10–CV–515–DBH, 2014 U.S. Dist. LEXIS 33361, at *20-21 (D. Me. Mar. 14, 2014) (citing *Thirteen Appeals*).

### B. The Requested Attorneys' Fees Award is Fair and Reasonable

Plaintiffs here seek Court approval of Class Counsel attorneys' fees of 33.33% of the cash Settlement Fund ($2,416,666.66). Agreement ¶ 111. This request is within the range of attorneys' fee requests that have been approved in this District and within the First Circuit, including in similar data privacy class actions. *See In re Sovos Compliance Data Security Incident Litig.*, No. 1:23-cv-12100 (Dkt. No. 51) (D. Mass. July 23, 2024) (awarding one-third in attorneys' fees); *McCormick v. Festiva Dev. Grp., LLC*, No. 2:09-cv-00365, 2011 U.S. Dist. LEXIS 67586, at *7 (D. Me. June 20, 2011) (awarding fees in the amount of one third of settlement fund); *Applegate v. Formed Fiber Techs., LLC*, No. 2:10-cv-00473, 2013 U.S. Dist. LEXIS 166171, at *1 (D. Me. Nov. 21, 2013) (same); *Bennett v. Roark Capital Grp., Inc.*, No. 2:09-cv-00421, 2011 U.S. Dist. LEXIS 48094, at *2 (D. Me. May 4, 2011) (same); *In re Solodyn Antitrust Litig.*, No. 14-md 2503, 2018 U.S. Dist. LEXIS 244677, at *11 (D. Mass. July 18, 2018) (same); *Bacchi v. Mass. Mut. Life Ins. Co.*, No.12-cv-11280, 2017 U.S. Dist. LEXIS 184926, at *10 (D. Mass. Nov. 8, 2017) ("Although the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been between twenty to thirty-five percent.").

### C. The Relevant Factors Considered by Courts in this Circuit Support the Requested Fess Award

When determining the reasonableness of attorneys' fees, the First Circuit has not endorsed a specified set of factors. However, courts in this Circuit generally consider "the size of the fund and the number of persons benefitted; the skill, experience, and efficiency of the attorneys involved; the complexity and duration of the litigation; the risks of the litigation; the amount of time devoted to the case by counsel; awards in similar cases; and public policy considerations." *Mongue v. Wheatleigh Corp.*, No. 3:18-cv-30095-KAR, 2024 U.S. Dist. LEXIS 69928, at *13 (D. Mass. Apr. 16, 2024); *In re Neurontin*, 58 F. Supp. 3d at 170 (considering the same factors) (quoting *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861 RGS, 2005 U.S. Dist. LEXIS 17456, at *12 (D. Mass. Aug. 17, 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000))).[3] Each of these factors support the requested one-third fee as fair and reasonable.

#### 1. *Size of the Fund and the Number of Persons Benefited*

Class Counsel secured a favorable $7,250,000.00 non-reversionary cash Settlement Fund for the benefit of Plaintiffs and the Settlement Class. This amount equates to $3.63 per Settlement Class Member, a number that meets or exceeds the results achieved in other recent data breach settlements. *See, e.g.*, *In re Lincare Holdings, Inc. Data Breach Litig.*, No. 8:22-cv-01472, 2024 U.S. Dist. LEXIS 110789, at *11-12 (M.D. Fla. June 24, 2024) (approving one-third in attorneys' fees for data breach class action equating to $2.50 per class member); *In re Forefront Data Breach Litig.*, No. 1:21-cv-00887, 2023 U.S.

---

[3] The factors were similarly expressed by this Court in *Sylvester v. CIGNA Corp.*, 401 F.Supp.2d 147, 151 (D. Me. 2005), as: "(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to properly perform the legal services; (2) the likelihood that acceptance of the particular employment will preclude other employment by the lawyers or their law firms; (3) the fee customarily charged for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent." Applying that recitation of relevant factors, this Court should conclude the attorneys' fees requested are reasonable.

Dist. LEXIS 175848, at *29 (E.D. Wis. Mar. 22, 2023) (approving 40% in attorneys' fees for data breach class action equating to $1.55 per class member).

In addition to the size of the Settlement Fund, when looking at the quality of Class Counsel's representation, courts typically find the absence or near absence of objections from the class to the attorneys' fees request supports the reasonableness of those fees. *See Bezdek*, 79 F. Supp. 3d at 347 (observing the "overwhelmingly positive" reaction of the class, which yielded only 23 opt-outs and 3 objections); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court."). The Settlement Class's reception thus far strongly suggests their approval of the Settlement and the proposed attorneys' fee award.

### 2.  *Class Counsel's Skills, Expertise and Efficiency*

In evaluating Class Counsel's skill, expertise, and efficiency, courts determine whether counsel, "had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek*, 79 F. Supp. 3d at 348. Class Counsel's background and the background of the supporting attorneys and staff of Kopelowitz Ostrow P.A., Siri & Glimstad LLP, and Chestnut Cambronne PA, demonstrate that Class Counsel is experienced in the highly specialized field of class action litigation – particularly data breach class action litigation – and are well-credentialed and equal to the difficult and novel tasks at hand. Joint Decl. ¶ 2 and Exs. 1-3 (setting forth qualifications of Class Counsel). Class Counsel's attorneys' fee request is commensurate with that skill and expertise, which was leveraged here to efficiently procure this valuable Settlement via early resolution of the Action.

### 3.  *Complexity and Duration of the Litigation*

Even though Class Counsel is confident Plaintiffs' claims would prevail at trial, as discussed above, they anticipated facing several challenges in prosecuting this Action, which anticipation led, in part, to the negotiations culminating in this Settlement. Joint Decl. ¶ 17. Due at least in part to the

cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one are particularly complex and face substantial hurdles even just to make it past the pleading stage. *See*, *e.g.*, *Pfeiffer v. Radnet, Inc.*, No. 2:20-cv-09553, 2022 U.S. Dist. LEXIS 125933, at *6-7 (C.D. Cal. Feb. 15, 2022) ("Historically, data breach cases have had great difficulty in moving past the pleadings stage and receiving class certification."); *Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695, at *7 (C.D. Cal. Dec. 9, 2021) ("data breach class actions are among the riskiest and uncertain of all class action litigation due to the absence of direct precedent certifying data breach cases as class actions"); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md- 2807, 2019 U.S. Dist. LEXIS 135573, at *14 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky."). Thus, absent this Settlement, Settlement Class Members may never have secured relief, financial, or otherwise, and would have otherwise endured lengthy, expensive, and arduous litigation, during which they would still be exposed to the risk of identity theft. Joint Decl. ¶ 21.

Absent the Settlement, the Parties would likely engage in extensive pre-trial motion practice followed by complex and technical discovery, utilizing experts, which depletes resources from both Parties, as well as this Court. *Id.* 11. The litigation's complexity is not diminished by the fact that Class Counsel was able to reach a prompt and efficient settlement. By reaching this favorable Settlement prior to dispositive motions or trial, Plaintiffs and Settlement Class Members avoid significant expense and delay, and instead ensure a fair recovery for the Settlement Class. *See Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 U.S. Dist. LEXIS 44548, at *14 (E.D.N.Y. Mar. 27, 2017) ("the settlement provides certain compensation to the class members now, rather than awaiting an eventual resolution that would result in further expense without any definite benefit to class members").

Accordingly, the requested attorneys' fee award considers the novelty and complex nature of data breach class action cases, and appropriately compensates Class Counsel's ability to resolve this matter efficiently while timely recovering the maximum amount available to the Settlement Class.

### 4. *Contingency and Risky Nature of Litigation*

The uncertain nature of contingency fees requires counsel to assume more risk than in cases where compensation is based on billable hours. The risk in prosecuting a data breach class action is an important consideration in determining an appropriate attorneys' fee award and is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys who prosecute them. This factor also embodies an assumption that contingency work is entitled to greater compensation than non-contingency work. *In re Lupron* 2005 U.S. Dist. LEXIS 17456, at *15 ("[m]any cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award"); *see also Brulee v. Dal Global Servs., LLC*, No. CV 17-6433, 2018 U.S. Dist. LEXIS 211269, at *28 (C.D. Cal. Dec. 13, 2018) ("Attorneys are entitled to a larger fee award when their compensation is contingent in nature"). Here, Class Counsel undertook this Action on a purely contingent basis, with no assurance of recovery of costs or compensation for their time. Joint Decl. ¶ 19. As such, they assumed significant risk of nonpayment or underpayment. *Id.* Furthermore, the attorneys involved have foregone the ability to devote time to other cases and advanced their own funds to prosecute the Action, all at the substantial risk it would yield no (or very little) recovery and leave them uncompensated for their time and out-of-pocket costs. *Id.* Despite these substantial risks, Class Counsel remained steadfast and chose to represent Plaintiffs on contingency. *See Pfeiffer*, 2022 U.S. Dist. 125933, at *7 ("Because Class Counsel took this case on a contingency basis in a risky and still-developing area of law, this factor weighs in favor of the proposed attorneys' fee award."). Because Class Counsel invested substantial time, effort, and resources into the litigation of this risky and uncertain case with no guarantee or promise of return on their investment, such risk warrants an appropriate fee. *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1380 (N.D. Ga. Mar. 20, 2019) ("a contingency fee arrangement often justifies an increase in the award of attorney's fees").

5.  *Plaintiffs' Counsel's Time and Lodestar are Reasonable*

Class Counsel and additional Plaintiffs' counsel devoted a significant amount of time to prosecuting Plaintiffs' claims efficiently and effectively to ensure that the best possible outcome for the Settlement Class could be achieved. As a result, their lodestar is reasonable. Joint Decl. ¶ 24. The combined lodestar for Class Counsel and additional Plaintiffs' counsel here as described in the accompanying declaration is $637,241.50, reflecting the combined attorney and paralegal time invested in the litigation thus far. Joint Decl. ¶ 30. This time included investigating and drafting the initial complaints; drafting the motion to consolidate the Related Actions and appoint interim co-lead counsel; drafting the consolidated complaint; drafting formal discovery and conducting informal discovery; preparing for and attending mediation; negotiating a complex Settlement Agreement; moving for and successfully obtaining Preliminary Approval; working in concert with the Settlement Administrator; monitoring the Notice Program and Claim administration; and preparing this Motion. *Id.* As it currently stands, if approved by the Court, the requested combined fee award results in a multiplier of approximately 3.79. *Id.* ¶ 14. *See, e.g.*, *In re Sovos Compliance Data Security Incident Litig.*, No. 1:23-cv-12100 (Dkt. No. 51) (D. Mass. July 23, 2024) (approving 3.77 lodestar multiplier); *Mooney v. Domino's Pizza, Inc.*, No. 1:14-cv-13723, 2018 U.S. Dist. LEXIS 232959 (D. Mass. Jan. 23, 2018) (approving 4.77 lodestar multiplier); *Gordan*, 2016 U.S. Dist. LEXIS 195935, at *9 (approving 3.66 lodestar multiplier). It is anticipated that Class Counsel will spend additional 40 hours going forward preparing for, and appearing at, the Final Approval Hearing, overseeing the final weeks of the Claim process, and handling all post-Settlement approval issues. Joint Decl. ¶ 18. Based on prior experience, Class Counsel anticipate an additional 40 hours will be invested in this Action. *Id.* Therefore, this Court should "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case" and find Class Counsel's lodestar is reasonable and supports an appropriate valuation of the time spent. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.

24

2008); *see also Rodriguez v. County of L.A.*, 96 F. Supp. 3d 1012, 1024 (C.D. Cal. 2014) ("Courts generally accept the reasonableness of hours supported by declarations of counsel.").

These efforts, taken with the risk of no recovery, amply support the requested award in this case, and demonstrate that the attorneys' fees requested here have been well earned.

### 6. *Awards in Similar Cases*

Federal district courts across the country award similar attorneys' fees in class actions involving non-reversionary all cash settlement funds. *See, e.g., In re Sovos Compliance Data Security Incident Litig.*, No. 1:23-cv-12100 (Dkt. No. 51) (D. Mass. July 23, 2024) (awarding one-third in attorneys' fees); *Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-cv-10090, 2023 U.S. Dist. LEXIS 93286, at *8 (D. Mass. Mar. 31, 2023) (same); *Silva v. Consol. Scaffolding, Inc.*, No. 1:24-cv-04591, 2024 U.S. Dist. LEXIS 168162, at *5 (S.D.N.Y. Sept. 18, 2024) (finding "that the one-third contingency fee in this case is appropriate"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million."); *City of Providence v. Aéropostale, Inc.*, No. 11-cv-7132, 2014 U.S. Dist. LEXIS 64517, at *60 (S.D.N.Y. May 9, 2014) (awarding one-third in attorneys' fees).

Examples of attorneys' fee awards of 33.33% or higher in data breach cases include: *Garza v. HealthAlliance, Inc.*, No. 72450/2023 (NY Sup. Ct., Westchester Cty.) (approving 35% of the settlement fund); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-MD-03090, 2025 WL 457896, at *11-12 (S.D. Fla. Feb. 11, 2025) (approving 33.33% of the settlement fund); *In re Planet Home Lending, LLC Data Breach*, No. 3:24-cv-127 (KAD) (D. Conn.), ECF No. 48 (same); *In re CorrectCare Data Breach Litig.*, No. 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 14, 2024) (same); *Kondo, et al. v. Creative Services, Inc.*, No. 1:22-cv-10438-DJC, ECF No. 39 (D. Mass. Sept. 7, 2023) (same); *In re Sovos Compliance Data Security Incident Litig.*, No. 1:23-cv-12100 (Dkt. No. 51) (D. Mass. July 23, 2024) (awarding one-third in attorneys' fees); *Alliance Ophthalmology, PLLC v. ECL Group, LLC*, Nos. 1:22-

CV-296, 1:22-CV-468, 2024 WL 3203226, at *14-16 (M.D.N.C. June 27, 2024); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, ECF No. 29 (N.D. Ga. Sept. 23, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA, ECF No. 47 (E.D. Ky. Oct. 25, 2023) (same); *In re: Forefront Data Breach Litigation*, No. 1:21-cv-000887-LA, 2023 WL 6215366, at *9 (E.D. Wis. Mar. 22, 2023) (same); and *Davidson v. Healthgrades Operating Company, Inc.*, No. 1:21-cv-01250-RBJ, ECF No. 50 (D. Colo. Aug. 22, 2022) (same).

As the case law from this Circuit and other federal courts cited above demonstrate, the one-third requested attorneys' fee award sought here is squarely in line with other awards approved in this Circuit and other data breach cases across the country.

### 7.   *Public Policy Considerations*

Finally, public policy considerations support awarding Class Counsel the requested attorneys' fee award. "The public benefits when attorneys undertake a complex commercial case that implicates consumer protections and data privacy. In addition to providing compensation to injured class members, the litigation and settlement of plaintiffs' claims incentivizes retailers to take stronger data-protection measures." *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472, 2022 U.S. Dist. LEXIS 102805, at *67 (S.D.N.Y. June 8, 2022). Here, the Settlement serves an important public policy consideration through Plaintiffs receiving confirmation that Defendants have undertaken reasonable steps to further secure their systems and environments.

While court-awarded fees must be reasonable, setting fees too low or randomly will create poor incentives to bringing large class action cases. *See In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704, 2020 U.S. Dist. LEXIS 104842, at *24 (S.D.N.Y. June 16, 2020) ("Generally, public policy is served by ensuring a fee is large enough to incentivize lawyers to bring meritorious class actions in the future."). Accordingly, compensating Class Counsel appropriately for prosecuting this action serves this important policy goal. Thus, public policy considerations favor the reasonableness of the

4911-6314-1945, v. 1

requested fees award.

### C.  The Requested Expense Reimbursement is Reasonable and Should be Awarded

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Ford*, 2023 U.S. Dist. LEXIS 93286, at *7-8 (quoting *Hill v. State St. Corp.*, No. 09-12146, 2014 U.S. Dist. LEXIS 179702, at *53 (D. Mass. Nov. 26, 2014)); *see also Anderson v. Team Prior, Inc.*, No. 2:19-cv-00452, 2022 U.S. Dist. LEXIS 196144, at *19 (D. Me. Oct. 28, 2022) (approving reasonable litigation expenses in a class action settlement). To be recoverable, the costs must be "adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D. N.J. 2001). Here, Class Counsel and additional Plaintiffs' counsel incurred a combined $9,772.33 in litigation costs that were necessary to the representation of the Settlement Class and seek reimbursement of the same. Joint Decl. ¶ 33. These well-documented costs include the various court filing and pro hac vice fees, service costs, legal research, and mediator's expenses. These costs were modest, reasonable, and necessary for the prosecution of the case. *See, e.g.*, *Hill*, 2014 U.S. Dist. LEXIS 179702, at *53-54 (reimbursing litigation costs for necessary expenses such as court fees and legal research).

### D.  The Requested Service Awards Should Be Approved

Finally, the Class Representatives respectfully request approval of Service Awards in the amount of $3,000.00 each, for a total of $45,000.00. These awards recognize the burdens assumed by Plaintiffs in instituting the Related Actions, spending time communicating with Class Counsel, fulfilling litigation and Class Representative responsibilities, and taking on the risks inherent with publicly attaching themselves to the Action. *See, e.g.*, *In re Relafen*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.") (citation omitted); *In re Lupron*, 2005 U.S.

4911-6314-1945, v. 1

Dist. LEXIS 17456, at \*24-25 (same). "In granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also . . . rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allmerica Fin. Corp.*, No. 97-40204, 1999 U.S. Dist. LEXIS 7793, at \*11-12 (D. Mass. May 19, 1999) (approving $5,000 each for the four representative plaintiffs); *see also* Anderson, 2022 U.S. Dist. LEXIS 196144, at \*18-19 (same); *In re Intuniv Antitrust Litig.*, No. 16-cv-12396, 2022 U.S. Dist. LEXIS 13893, at \*7 (D. Mass. Jan. 26, 2022) (same).

Here, Plaintiffs agreed to serve as Class Representatives and have been actively involved in the litigation. Joint Decl. ¶ 53. Plaintiffs pursued the interests of the Settlement Class by undertaking responsibilities attendant to serving as Class Representatives, including, without limitation, periodically conferring with Class Counsel, providing relevant documents and information, and reviewing pleadings, Settlement documents, and other filings in the Action. *Id.* The information they provided Class Counsel was critical in determining the legal claims to be asserted and the scope of damages alleged. *Id.* Accordingly, given Plaintiffs' time and efforts in supporting the litigation, combined with the risks and burdens of serving as Class Representatives, the application for a $3,000.00 Service Award to each settlement Class Representative should be granted.

## IX.    CONCLUSION

For all the foregoing reasons, Plaintiffs and Class Counsel respectfully request this Court enter an Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs Tonya Gambino, Quinston Anderson, Michael Meyerson, Laura Russell, Kathy Bishop, Kristine Iushkova, Robert Hickman, Sally Hughes, Melody Bowman, Brandy Brady, Virginia Deme-Duff, Myron Nottingham, and Yasmine Encarnacion as Class Representatives; (4) confirming the appointments of Jeff Ostrow, Mason Barney, and Bryan Bleichner as Class Counsel;

(5) confirming the appointment of Angeion Group as Settlement Administrator; (6) awarding Class Counsel $2,416,666.66 for attorneys' fees and $9,772.33 for costs; (7) awarding each Class Representative a $3,000.00 Service Award; (8) approving payment of the Settlement Administration Costs; (9) overruling timely objections, if any; and (10) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. A proposed Final Approval Order is attached for the Court's convenience as **_Exhibit D._**

DATED: April 22, 2025                    Respectfully submitted,

/s/ _Jeff Ostrow_
Jeffrey Ostrow (_pro hac vice_)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-332-4200
ostrow@kolawyers.com

Mason A. Barney (_pro hac vice_)
Tyler J. Bean (_pro hac vice_)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: 212-532-1091
mbarney@sirillp.com
tbean@sirillp.com

Bryan Bleichner (_pro hac vice_)
**CHESTNUT CAMBRONNE P.A.**
100 Washington Ave. South, Ste. 1700
Minneapolis, MN 55401
Tel: 612-339-7300
bbleichner@chestnutcambronne.com

_Counsel for Plaintiffs and the Proposed Settlement Class_

4911-6314-1945, v. 1

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2025, I filed the foregoing document with the Court via CM/ECF. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Jeff Ostrow*
Jeff Ostrow

4911-6314-1945, v. 1